PICKETT v. STATE.*

(Division B. Nov. 30, 1925.)

[106 So. 95. No. 25284.]

1. CRIMINAL LAW. *All instructions given to be read together as one.*
All instructions given in a case are to be read together as one instruction.

2. CRIMINAL LAW.    *Refusal of instructions covered by others given not harmful.*

   Refusal of instructions to defendant was without harm to him; substantially the same principles of law being embodied in other instructions given.

---

*Headnotes 1. Criminal Law, 16 C. J., Section 2493; 2. Criminal Law, 16 C. J., Section 2506.

APPEAL from circuit court of Lauderdale county.

HON. C. C. MILLER, Judge.

Clyde Pickett was convicted of crime, and appeals. Affirmed.

*Jacobson & Brooks,* for appellant.

The state proceeded in this case upon the idea that Clyde Pickett was present at the still, and because he was there and the killing took place he was responsible for it. From this circumstance they justified the conclusion that because Clyde Pickett admitted it was his still 'and he was making liquor there, this made him criminally responsible for every crime committed there, even though he had no control over it.

This was presented by the state, on the theory that the jury might well find that there was a conspiracy to avoid arrest, when there was nothing to justify that.

It was suggested further that Ben Pickett was guilty, when in the trial of Clyde Pickett, Ben Pickett's guilt was just as much an issue to be determined by the jury as Clyde Pickett's because if the jury had believed from the evidence, and had been allowed to consider the evidence of Clyde Pickett testifying, and I quote it as in those instructions, then if a reasonable doubt had arisen as to Ben Pickett's guilt it would have been an end to the deliberations in so far as Clyde Pickett was concerned, because Clyde Pickett is only seriously held by reason of the fact the state contends he was there aiding and assisting Ben Pickett. If they have done so upon

that proposition, that he was there aiding and assisting, then he is entitled to a verdict of "not guilty." Ben Pickett may have been guilty, and this court has held that he was, but Ben Pickett's guilt is not conclusive as to Clyde, although it might have been necessary to consider Ben's guilt in connection with some phases of Clyde's guilt.

We feel that these instructions incorrectly announce the law, and that this case should be reversed on account of the instructions for the state.

Complaint is made of the action of the court in refusing instruction No. 2 for the appellant. It is beyond our comprehension how it can be argued that Mr. Cleveland should not have been required to have notified Pickett of his purpose.

This instruction as it is drawn simply proposes to state the duty and position of an officer, as well as to put those who are friendly to the administration of the law in a position where they do not have to be making explanations about such a harsh and impossible rule as this doctrine. A man can be riding along the streets of any community and on the highway, and be shot down without a moment's warning, if this instruction is not correct, and the act be condoned by the law.

Instruction No. 3 was asked for on this theory—that if Ben Pickett killed Cleveland in self-defense, and the evidence, or the want of evidence, or the uncertain nature of the evidence raised a reasonable doubt of that fact, then Clyde Pickett could not have been aiding, assisting and abetting a man in killing another, provided the fellow who did the killing shot in the lawful defense of his own person, and it was upon this theory that we believed them, and think now that this was the law.

The doctrine of aiding, assisting, and abetting the principal in killing an individual is upon the theory that there was a premeditated design to take the life of a human being; that there was a confederacy looking to that purpose, and the actual shooting by one, aided and

assisted by the other, was in furtherance of that design.

Will it be contended that if Ben Pickett shot Cleveland in the lawful defense of his person, that there was a premeditated design? In other words, we urge here that if Ben Pickett shot in self-defense, then no law was violated; no criminal confederacy was consummated, and it is upon that theory we asked for that instruction, and upon which we urge reversible error.

Refused instruction No. 3 said that if Ben Pickett, as shown from the evidence, killed Cleveland in self-defense, then Clyde Pickett was entitled to a verdict of "not guilty."

The argument as to instruction No. 3 applies with full force to refused instruction No. 4, instruction No. 5, instruction No. 6, and instruction No. 7. Assignment of error 37 complains of the action of the court in declining to give to the appellant the instruction which says to the jury that he is presumed to be absolutely innocent of the crime in whole or in part.

We cannot understand why this instruction was refused to the defendant. It is sometimes answered that they are covered in other instructions, but we fail to find it in this case. The court here knows that the presumption of innocence has been a settled right in criminal trials ever since America joined the family of nations. The jurisprudence of this country has stood out for the presumption of innocence over one hundred and twenty years. It has been the boast of our civilization ever since this government was a government that the presumption of innocence is a shield that protects every man charged with crime.

We do not know of any better dissertation upon the law with reference to the presumption of innocence that is an improvement over a written discussion of it than that announced in *Cunningham* v. *State,* 56 Miss. 268.

Clyde Pickett should never have been convicted of murder, and this verdict should not stand.

*J. L. Byrd,* assistant attorney-general, *Chas. B. Cameron* and *Neville & Stone,* for the state.

No error was committed by the learned court in giving or refusing instructions. This appellant was given twenty-one and surely counsel could state the law of his case in twenty-one instructions. It is the state's theory that this record shows a case of rare guilt. Not the guilt of a child, as argued by counsel. The trial court and the jury saw the defendant and the case is before this court.

The trial court saw the defendant and heard the testimony touching his age and submitted the question of his guilt to the jury. They also saw him and heard the testimony touching his age and promptly returned the verdict of guilty; and we do not think this court will disturb the verdict of the jury, because of counsel's comment on the youthfulness of this defendant.

This case, as stated before, is a companion case of *Ben Pickett v. The State,* recently affirmed by this court.

The law, as announced in the Ben Pickett case, controls in this case.

Anderson, J., delivered the opinion of the court.

We are of opinion that the trial court committed no error in this case harmful to appellant either in the admission of evidence or the giving or refusing of instructions. This court has often held that all instructions given in a case are to be read together as one instruction. So considering the instructions given for the state and for appellant in this case, in our judgment every aspect of the case favorable to appellant was properly put to the jury. Something like twenty instructions were given on behalf of appellant. Perhaps most of appellant's refused instructions embodied correct principles of law. Substantially the same principles of law were, however, embodied in other instructions given by the court. Their refusal, therefore, was without harm to appellant.

*Affirmed.*